## Fred J. Rhodes and Allen P. Miller, Executors, etc., v. Julius Rhodes, for use, etc.

### Gen. No. 4,329.

1. PROPOSITIONS OF LAW—*when, not required.* Propositions of law are not essential where a cause is disposed of without a trial.

2. GARNISHMENT—*what will not defeat.* Where a debtor had an interest in the estate of a relative and before administration received property in lieu thereof, a payment such as will defeat a garnishment has not been made.

3. GARNISHMENT—*what will not defeat.* An attempted payment of an interest of a debtor in a deceased's estate will not operate to defeat a garnishment where no receipt or other evidence of such payment is filed in the office of the clerk of the court of probate before the service of the garnishment process.

4. EXECUTION—*when error to award.* In the garnishment of an executor, it is error to award execution against land which it appears was, prior to the service of the process, sold to third parties.

Attachment proceeding. Appeal from the Circuit Court of Stark County; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the April term, 1904. Affirmed in part and reversed in part. Opinion filed August 24, 1904.

JAMES H. RENNICK, for appellants.

VICTOR G. FULLER, for appellee.

MR. PRESIDING JUSTICE FARMER delivered the opinion of the court.

This suit was begun in attachment by Payton P. Johnson, against Julius Rhodes, a non-resident of the State of Illinois. The writ was levied on the interest of Julius Rhodes in certain lands in Stark county. Fred J. Rhodes and

Allen P. Miller. executors of the last will of Elizabeth
Rhodes, deceased, mother of Fred J. and Julius, were
served as garnishees. No service was had on Julius Rhodes,
the defendant in attachment. Fred Rhodes and Allen P.
Miller as executors filed an interpleader, claiming title to
the land in themselves in trust for the purposes of the will,
and alleged that the interest of Julius Rhodes in the estate
was in the moneys of said estate, and that on May 7, 1903,
Fred J. Rhodes, one of the executors, advanced to Julius
Rhodes his full share in and to the estate of Elizabeth Rhodes,
deceased. The will of Elizabeth Rhodes was made part of
the interpleader and provided, among other things, that
after payment of debts and certain charges made against
the estate, which it is admitted by counsel do not affect this
proceeding, that her estate should go to her children and
grandchildren. Julius Rhodes was one of her children, and
by the will took a one-fifth interest in the remainder of his
mother's estate. The will also authorized the executors
to sell the real estate and make settlement and distribu-
tion, and further provided that no deductions should be
made from the share of Julius Rhodes on account of any
indebtedness he owed the testatrix and released the same
to him. The interpleader was filed October 17, 1903. Oc-
tober 19, plaintiff in the attachment, Johnson, filed in the
case seven interrogatories to be answered by Fred J.
Rhodes and Allen P. Miller, executors summoned as gar-
nishees. In answer to the fourth interrogatory the gar-
nishees stated that they had sold the land levied on and
taken in payment the purchaser's note for the purchase
price, $2,500, payable March 1, 1904, and that the deed was
to remain in the hands of Miller until the note was paid,
when it was to be delivered; that they also had in their
hands, as executors, a note for $500, and that all known
charges and debts against the estate had been paid except
the executors' fees and court costs. In the answer to the
sixth interrogatory Fred J. Rhodes stated that about the
day the will was filed, and before letters testamentary were
issued, he advanced to Julius Rhodes in full payment of his

share of his mother's estate over $1,300; that it was made by delivering to Julius Rhodes three notes due Fred J. Rhodes for an aggregate sum of $637 and interest at eight per cent from 1890; that the notes were accepted by Julius in full payment of his share of the estate, and that on October 3, 1903, before the executors were served as garnishees, Julius delivered to Fred, who was his brother and one of the executors, a receipt in full for his share of the estate, and that no order of the court was obtained in making this settlement. In the same interrogatory Allen P. Miller answered that he knew nothing of the payment made by Fred J. Rhodes. These answers were filed October 21, 1903.

It appears that no trial was had on the interpleader, but on October 24, 1903, the court rendered judgment in favor of Johnson against Julius Rhodes, defendant in attachment, for $235.38 and costs of suit, and awarded execution against the land and premises attached. On December 1, 1903, Johnson filed a general demurrer to the answer to the sixth interrogatory, and as to the answer to the other interrogatories prayed judgment against the executors as garnishees. The demurrer to the answer to the sixth interrogatory was on the same day sustained and a judgment rendered against the garnishees for $235.38 and costs, and the same ordered to be paid by the executors in due course of administration out of the estate of Elizabeth Rhodes, deceased. Appellants make no point that under the Act of 1897 (Hurd's R. S., sec. 35, chap. 62) judgment against the executors as garnishees could not have been rendered before an order of distribution had been made by the County Court. They state in their brief that " they make no objection to the time of rendering judgment against them as garnishees; if judgment was entered at too early a date that matter is expressly waived, for it is not denied that the share given to Julius Rhodes is more than sufficient to pay the amount of said judgment." The principal question argued by appellants is raised by two propositions of law asked by them, which were refused by the court. The substance of

the first one is that if the executors held notes of Julius Rhodes amounting to more than his share in the estate, and before an order for distribution was made, delivered them to him in payment of his legacy and took his receipt therefor before the executors were served as garnishees, such payment would defeat the action against the garnishees, although the receipt was not filed in the office of the clerk of the County Court before garnishment process was served on the executors. The substance of the second proposition was that executors might pay a legatee in advance, a sum equal to or exceeding in value his legacy, taking a receipt in full, and such payment would exempt the executors from liability as garnishees if made and receipted for before the service of process on them, although the receipt should not be filed till after service. Appellants submitted propositions embodying their views of the law, and asked the court to hold them to be the law. The court refused them, and in this there was no error. In the first place, propositions of law were not proper, as the case was disposed of without a trial. Sampson, et al., v. Comrs. of Highways, *post*, p. 443, and cases there cited. In the second place, they were properly refused, if it had been a case where they were proper, as they did not state the law applicable to the case.

The answers of appellants to the interrogatories propounded to them as garnishees showed they had an abundance of property in their hands to satisfy appellee's claim against Julius Rhodes, and that it was liable therefor unless the transaction between Fred J. Rhodes and Julius, as set out in the answer to which the court sustained a demurrer, should be held to be a valid payment to him of his share of his mother's estate by the executors. It is apparent that the transaction between Fred J. and Julius Rhodes cannot be considered a payment by "the executors." Fred J. held notes amounting to some $1,300 against his brother Julius and after the will was filed for probate, which was May 1, 1903, and before letters testamentary had issued, he delivered to Julius his notes

Rhodes v. Rhodes.

which he claims were accepted by Julius in full payment of his share of the estate. For some reason not stated, no receipt was given by Julius till October 3, 1903, and it had not been filed in the office of the clerk of the County Court at the time the executors were served with process. It is not stated in the answer to which the demurrer was sustained, that by the agreement between Fred J. and Julius, Fred became entitled to receive the legacy provided by the will for Julius, but that was the obvious purpose and effect of the transaction. Miller, co-executor with Fred, answers that he knows nothing about the transaction. Clearly, it was a private arrangement between the two brothers that Julius should pay the notes Fred held against him by turning over to Fred his interest in his mother's estate. At the time it was done Fred had not received letters testamentary authorizing him to act as executor and the payment was not made out of the property or estate of the testatrix but out of Fred's private property. At best it was no more than an equitable assignment to Fred by Julius of his interest in his mother's estate. The act of 1897 in relation to garnishment of administrators and executors, before referred to, provides that " no assignment, transfer, or other disposition by an heir, legatee or devisee, of his distributive share, legacy or devise in the hands of any administrator or executor shall operate to defeat the garnishment of the same, unless the said assignment, transfer, or other disposition is reduced to writing and filed in the office of the clerk of the County Court out of which such letters testamentary or of administration were issued before the service of process of garnishment upon such administrator or executor." The only paper that is claimed to have been executed by Julius was a receipt in full for his share of the estate, and while it bore date a few days prior to the service of the executors with process, it was never filed in the office of the clerk of the County Court, and, therefore, if treated as an assignment by Julius to Fred of his interest in the estate, was inoperative to relieve the fund from liability to pay appellee's claim. There was no error committed by the

court in sustaining the demurrer to appellants' answer to the sixth interrogatory, and rendering judgment against appellants as garnishees. It was erroneous, however, for the court, in the judgment against the original defendant, to award execution against the lands attached. There was no hearing on the interpleader. The answer to interrogatory four stated that the executors had sold the land, before they were served with garnishment process, to a third party. Appellee states in his brief that at the time the judgment was taken he waived all rights under the levy on the land and relied on the garnishment proceeding alone. The record does not show any such waiver and as there should not have been an execution awarded against the land, the judgment against appellants as garnishees is affirmed and the judgment and order for the sale of the land attached is reversed and appellee adjudged to pay one-third of the costs in this court.

*Affirmed in part and reversed in part.*